# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| **OLIVIA SELTO**, individually, as guardian of minor child K.P. and as Personal Representative of the Estate of **KEVIN PETERSON JR**, deceased, **TAMMI BELL**, individually and as Personal Representative of the Estate, and **KEVIN PETERSON SR**, individually.<br><br>Plaintiffs,<br><br>v.<br><br>**COUNTY OF CLARK**, a political subdivision of the State of Washington; **SHERIFF CHUCK ATKINS**; Sheriff's Detective **ROBERT ANDERSON** ; Sheriff's Deputy **JONATHAN FELLER**; and **JOHN and JANE DOES 1-10**, in their official and personal capacities.<br><br>Defendants. | NO. 3:22-cv-5384<br><br>COMPLAINT<br><br>JURY DEMANDED |

COMES NOW the above-named Plaintiffs, by and through their attorneys Mark Lindquist and Anthony Marsh of Herrmann Law Group, by way of claim, allege upon personal knowledge as to themselves and their own actions and upon information and belief upon all other matters, as follows:

## I. INTRODUCTION

1. On or about October 29, 2020, Kevin Peterson Jr. was shot and killed by Clark County Sheriff's Deputies as he ran away from a drug sting operation.

COMPLAINT - 1

2. On or about February 4, 2021, Clark County Sheriff's Deputies shot and killed an unarmed motorist, Jenoah Donald, after an illegal pretextual stop.

3. On or about January 29, 2022, one of the deputies who needlessly shot at Kevin Peterson shot and killed an off-duty Vancouver Police Officer, apparently mistaking him for a criminal suspect.

4. Clark County has a policy, custom, and established practice of failing to supervise and train its officers to use deadly force only as a last resort.

5. There have been numerous protests and local and national media attention concerning the Clark County Sheriff's Department's unwarranted use of deadly force.

## II. PARTIES

6. Defendant CLARK COUNTY is a political subdivision of the State of Washington. Defendant has various departments, including but not limited to the Sheriff's Department "CCSD," which is responsible for providing law enforcement services within the County of Clark. CCSD's mission is to "protect and safeguard our community."

7. Defendant SHERIFF CHUCK ATKINS, was the elected Sheriff of the CCSD, who, at all times relevant hereto, was acting under color of law. In this role, he made supervisory decisions as they relate to Defendant deputies, including discipline, assignment, and training. The Sheriff's acts and omissions were, at all times alleged, affirmatively linked to the behavior of Defendant deputies in the sense that he encouraged, condoned, and/or acquiesced in their acts, omissions, customs and established practices.

8. Defendant ROBERT ANDERSON is a Clark County Sheriff's Deputy who, at all times relevant hereto, was acting within the scope of his employment, and under color of law.

9. Defendant JONATHAN FELLER is a Clark County Sheriff's Deputy who, at all times relevant hereto, was acting within the scope of his employment, and under color of law.

COMPLAINT - 2

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

10. Defendants JOHN DOES 1-10 (hereinafter "Defendants Doe") are employees and/or agents of the Clark County Sheriff's Department. Each Defendant Doe was within the scope of his or her employment at all relevant times. Defendants Doe knew and were deliberately indifferent and were negligent; acted in furtherance of an official and/or *de facto* policy or procedure of deliberate indifference and negligence; and/or were responsible for the promulgation of the policies and procedures and permitted the customs and practices pursuant to which the acts alleged herein were committed. Their identities are unknown at this time and will be named as discovery progresses.

11. Plaintiff OLIVIA SELTO is the decedent's girlfriend and mother to his only child. She brings claims individually, as guardian of decedent's minor child, and as a Personal Representative of the Estate of the deceased. Plaintiff TAMMI BELL is a parent of the deceased and brings claims individually and as a Personal Representative of the Estate. KEVIN PETERSON SR. is a parent of the deceased and brings claims individually. Plaintiffs bring all claims available to the Estate of KEVIN PETERSON JR. and all beneficiaries under federal and state law.

### III.     JURISDICTION AND VENUE

12. This action arises under Washington State's wrongful death law and the Constitution and laws of the United States, including 42 U.S.C. § 1983. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

13. Venue is proper in the Western District of Washington pursuant to 28 U.S.C.§ 1391(b)(1) and (b)(2). Clark County is located in this District, and the events and omissions giving rise to the claims in this action occurred in this District.

14. An RCW 4.96.020 Tort Claim was properly and timely filed with Clark County on or about June 24, 2020. Over sixty calendar days have elapsed since the claim was presented to the City. All substantive and procedural requirements of RCW 4.96.020 have been met.

COMPLAINT - 3

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

## IV.   FACTS

**A. WRONGFUL DEATH OF KEVIN PETERSON JR.**

15. Kevin Peterson Jr., like his father, played football for Union High School in Vancouver, Clark County. At the time of his death, he was a 21-year-old Black man. He had no criminal record.

16. He is survived by his parents, Kevin Peterson Sr. and Tammi Bell, a girlfriend, Olivia Selto, and an infant daughter.

17. Clark County Sheriff's Deputies set up a sting operation to arrest Kevin Peterson Jr. for allegedly agreeing to sell 50 Xanax pills to an informant.

18. Deputies set up the potentially dangerous operation in the parking lot of a Quality Inn on or about October 29, 2020, during peak traffic hours of 5:00 and 6:00 pm.

19. Deputies did not have the permission of the open business to use their property and did not take steps to ensure the safety of the surrounding public.

20. Mr. Peterson pulled into the parking lot. While sitting in his car, he realized he had been set up. His car was blocked in by deputies. He opened his door and ran.

21. In his pockets were a cell phone and a gun. Something fell out of his pocket, but he picked it back up and kept running. He did not say or do anything threatening to surrounding deputies. The deputies did not attempt to tackle or shoot him.

22. He ran out of the Quality Inn parking lot, cut through some property, and then crossed into a U.S. Bank parking lot. Though the bank branch was closed, he was picked up on surveillance video. He can be seen on video walking with a cell phone in his hand while he FaceTimes Ms. Selto.

23. Ms. Selto could tell Mr. Peterson was scared and panicked as he explained what happened. He was still trying to escape from the deputies.

24. As he walked south, he was spotted by deputies. One of the deputies hold him to stop. Mr. Peterson turned and ran away. "They're shooting at me," he told Ms. Selto.

COMPLAINT - 4

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

25. Surveillance video shows Mr. Peterson running away when the deputies begin shooting at him from behind. Video from a business across the street confirms this from a different angle.

26. The first shots are fired by Detective Robert Anderson. In a recorded interview given eight days after the killing, Detective Anderson, accompanied by a lawyer, explains why he shot a suspect who was running away. **"I kinda just drew a line in the sand and I was – I said, 'I've given suspect enough commands. If he takes another step, I'm gonna shoot him.' Um, he continued to run. I started shooting."**

27. Deputy Jonathan Feller was the second officer to shoot at Mr. Peterson. Deputy Fuller, unlike Detective Anderson, was not a part of the drug task force. He was on patrol when he heard radio traffic referring to a "black male with a gun running south on Highway 99." Deputy Feller took it upon himself to turn around and race full lights and sirens toward the action.

28. In a recorded interview given 11 days after the killing, Deputy Feller, accompanied by a lawyer, said he saw a gun in Mr. Peterson's hands. In fact, it was the cell phone Mr. Peterson was FaceTiming Ms. Selto with.

29. Deputy Feller said he got out of his vehicle and, "**I immediately drew my – my handgun …**" He pointed his gun at Mr. Peterson and began yelling commands to stop running away.

30. In the interview, Deputy Feller offers a less than cogent narrative and appears to falsely claim Mr. Peterson turned and pointed a gun at him. This claim is contradicted by statements of other officers at the scene and video evidence.

31. Mr. Peterson can be seen on two different videos running away. He didn't turn. He didn't have a gun in his hand. He did not point anything at Deputy Feller.

32. Deputy Feller began firing his weapon within seconds of exiting his vehicle and before he had a tactical understanding of the situation.

COMPLAINT - 5

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

33. In an eerily similar scenario a year later, Deputy Feller arrived at a scene and started shooting *within four seconds*. This time he shot and killed Vancouver Police Officer Donald Sohata.

34. After Mr. Peterson was shot and fell to the ground, he sat up and raised his cell phone to show what was happening to Ms. Selto.

35. Deputies fired additional rounds when Mr. Peterson sat up. Mr. Peterson fell back to the ground. He laid motionless.

36. In total, three deputies fired 34 rounds at Mr. Peterson in two volleys.

37. Autopsies indicate Mr. Peterson was hit by four rounds. Three of the shots were "back to front" as he ran away, including a perforating shot to the neck. The fourth shot was to his chest after he sat up.

38. Approximately five minutes after the shooting, deputies closed in around Mr. Peterson. A cell phone and gun were found near the body.

39. Mr. Peterson died at the scene from multiple gunshot wounds.

40. Next day, Sheriff Atkins spoke at a news conference and said Mr. Peterson "reportedly fired his weapon at the deputies." This statement was widely covered in the media and was wrong.

41. Law enforcement investigators subsequently contradicted the Sheriff and confirmed that there was no evidence Mr. Peterson ever fired his gun.

42. Deputy Feller was not terminated, disciplined, or re-trained after needlessly and recklessly shooting Mr. Peterson.

43. Clark County's failure to terminate, discipline, or re-train Deputy Feller set up the tragic death of Officer Sahoto a year later.

B. **CLARK COUNTY SHERIFF'S DEPARTMENT POLICIES, CUSTOMS, AND ESTABLISHED PRACTICES**

44. About three months after killing Mr. Peterson, Clark County Sheriff's Deputies shot and killed Jenoah Donald, an unarmed Black motorist who was illegally pulled over in a pretextual stop.

COMPLAINT - 6

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

45.     About a year after killing Mr. Peterson, Deputy Feller shot and killed an off-duty police officer, Donald Sahota. Within four seconds of arriving at a crime scene, Deputy Feller hastily fired numerous rounds at the officer, striking him repeatedly. The deputy apparently mistook the off-duty officer for a criminal suspect.

46.     In November of 2014, the Washington State Attorney General issued an opinion that law enforcement departments do not require the consent of individual officers to use body cameras.

47.     Clark County and Sheriff Atkins have declined to implement the use of body cameras at CCSD. None of the CCSD deputies were wearing body cameras at the time Mr. Donald, Mr. Peterson, and Officer Sahota were shot and killed.

48.     With deliberate indifference, Clark County has a policy, custom, and established practice of failing to supervise and train its officers to use deadly force only as a last resort as required by generally accepted practices and federal and state law.

49.     With deliberate indifference, Clark County has a policy, custom, and established practice of failing to supervise and adequately train its officers on de-escalation techniques, non-lethal tactics, and the decision-making process preceding use of deadly force.

50.     With deliberate indifference, Clark County has a policy, custom, and established practice of racial discrimination, bias, and inadequate training. These policies, customs, and practices caused deputies in the case of Mr. Peterson to shoot a scared young Black man running away from them.

51.     With deliberate indifference, Clark County failed to terminate, discipline, or retrain Deputy Feller after he recklessly and needlessly shot at Mr. Peterson. This indifference contributed to the death of Officer Donald Sahota.

52.     Each of these policies, customs, and established practices, described above and in other respects as well, were ratified by Clark County and/or Sheriff Atkins and/or other policy makers, and were a direct, proximate cause of Kevin Peterson's wrongful death.

COMPLAINT - 7

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

## V.   CLAIMS

### FIRST CAUSE OF ACTION:  WRONGFUL DEATH - STATE CLAIM

53.   Plaintiffs hereby restate and incorporate by reference all paragraphs of this Complaint as if fully set forth herein.

54.   By virtue of the facts set forth above, Defendants wrongfully caused the death of Mr. Peterson.

55.   Plaintiffs suffered harm as a result, entitling Plaintiffs to damages in an amount to be proven at trial.

### SECOND CAUSE OF ACTION:  NEGLIGENCE - STATE CLAIM

56.   Plaintiffs hereby restate and incorporate by reference all paragraphs of this Complaint as if fully set forth herein.

57.   All Defendants owed a duty to Plaintiffs to act as reasonable prudent persons. This duty includes an obligation to act in a careful, lawful and prudent manner and in full compliance with applicable law. At all times relevant to this case, all individually named Defendants were acting within the course and scope of their employment. Clark County is liable for the negligence of all individually named Defendants.

58.   Defendants Clark County and Sheriff Atkins had a duty of care to properly train officers. Such training should reasonably have included instruction how to carry out lawful stops and arrests without using excessive force and brutality, de-escalation techniques, and deadly force as a last resort, among other issues.

59.   By virtue of the facts set forth above, Defendant deputies, as law enforcement agents of Clark County, breached their duty to act as reasonable law enforcement officers by failing, neglecting, or refusing to properly and fully discharge their responsibilities.

60.   Defendants Clark County and Sheriff Atkins were responsible for training and supervising the individually named Defendant deputies and had a duty to adequately train and supervise those deputies. Defendants acted negligently by failing to adequately and properly train and supervise the individually named deputies with respect to the

HERRMANN LAW GROUP
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

discharge of their responsibilities and duties.

61. As a proximate cause of Defendants' breach of their duties, Plaintiffs have suffered harm, entitling Plaintiffs to damages, including but not limited to, loss of income, loss of liberty, extreme emotional distress, pain and suffering, and other damages in an amount to be proven at trial.

**THIRD CAUSE OF ACTION: 42 U.S.C. § 1983 - EXCESSIVE FORCE AND BRUTALITY**

62. Plaintiffs hereby restate and incorporate by reference all paragraphs of this Complaint as if fully set forth herein.

63. By virtue of the facts set forth above, all Defendants are liable for the deprivation of Mr. Peterson's civil rights guaranteed by the Fourth Amendment to the Constitution of the United States and 42 U.S.C. § 1983, to be free from unreasonable searches and seizures, including excessive force and physical brutality.

64. Such rights are long-standing and clearly established.

65. Plaintiffs hereby restate and incorporate by reference all paragraphs of this Complaint as if fully set forth herein.

66. By virtue of the facts set forth above, Defendant Clark County is liable under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), in that a policy or custom can be inferred from a showing of ratification of an unconstitutional act and CCSD's policies, customs, and established practices.

**FOURTH CAUSE OF ACTION: 42 U.S.C. § 1983, UNREASONABLE SEIZURE**

67. Plaintiffs hereby restate and incorporate by reference all paragraphs of this complaint as if fully set forth herein.

68. By virtue of the facts set forth above, all Defendants are liable for the deprivation of civil rights of Mr. Peterson, guaranteed by the Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. § 1983, to be free from unreasonable seizure, including shootings.

69. Such rights are long-standing and clearly established.

COMPLAINT - 9

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

70. By virtue of the facts set forth above, Defendant Clark County is liable under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), in that a policy or custom can be inferred from a showing of ratification of an unconstitutional act and CCSD's policies, customs, and established practices.

**FIFTH CAUSE OF ACTION: 42 U.S.C. § 1983, DEPRIVATION OF FAMILIAL RELATIONSHIP**

71. Plaintiffs hereby restate and incorporate by reference all paragraphs of this complaint as if fully set forth herein.

72. By virtue of the facts set forth above, all Defendants are liable for the deprivation of civil rights of Plaintiffs in their individual capacities, guaranteed by the Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. § 1983, to be free from the deprivation of their liberty interest in a familial relationship with Mr. Peterson without due process of law.

## VI. JURY DEMAND

73. Plaintiffs hereby demands a trial by jury.

## VIII. RELIEF REQUESTED

74. Damages have been suffered by Plaintiffs and to the extent any state law limitations on such damages are exist, they are inconsistent with the compensatory, remedial and/or punitive purposes of 42 U.S.C. § 1983, and therefore any such alleged state law limitations must be disregarded in favor of permitting an award of the damages prayed for herein.

75. WHEREFORE, Plaintiffs request a judgment against all Defendants:

(a) Fashioning an appropriate remedy and awarding economic and noneconomic damages, including damages for pain, suffering, terror, loss of consortium, and loss of familial relations, and loss of society and companionship pursuant to federal and state law, in an amount to be determined at trial;

(b) Punitive damages;

(c) Awarding reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, or as otherwise available under federal and state law;

COMPLAINT - 10

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710

(d) Declaring the defendants jointly and severally liable;

(e) Awarding any and all applicable interest on the judgment; and

(f) Awarding such other and further relief as the Court deems just and proper.

Respectfully submitted this 25th day of May, 2022.

**HERRMANN LAW GROUP**

*/s/ Mark Lindquist*

_____

Mark Lindquist, WA #25076
Anthony Marsh, WA #45194
Attorneys for Plaintiffs

COMPLAINT - 11

**HERRMANN LAW GROUP**
505 5th Ave So., Ste. 330
Seattle, WA 98104
T: 206-625-9104
F: 206-682-6710