The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| OLIVIA SELTO, individually, as guardian of minor child K.P. and as Personal Representative of the Estate of KEVIN PETERSON JR, deceased, TAMMI BELL, individually and as Personal Representative of the Estate, and KEVIN PETERSON SR, individually,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF CLARK, a political subdivision of the State of Washington; SHERIFF CHUCK ATKINS; Sheriff's Detective ROBERT ANDERSON; Sheriff's Deputy JONATHAN FELLER; and JOHN and JANE DOES 1-10, in their official and personal capacities,<br><br>Defendants. | No. 3:22-cv-5384 BJR<br><br>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>NOTE OF MOTION CALENDAR:<br><br>JUNE 23, 2023<br>WITHOUT ORAL ARGUMENT |

**I.   INTRODUCTION AND SUMMARY OF ARGUMENT**

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 1
3:22-cv-5384 BJR

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423



In a light most favorable to Plaintiffs, Kevin Peterson was not pointing his 40 MM pistol at the deputies, but was holding his cell phone in a horizontal position, and pointed it at the deputies, arm outstretched, and lining up with his head. These are acts which mimic the pointing of a gun. But according to Plaintiffs experts, he had dropped the gun, and this was his cell phone.

Case law makes it clear, if you display your hands or a dark object toward police in a manner that mimics a gun, the police act reasonably if they shoot you. That is what happened here, and summary judgment is appropriate.

## II.  STATEMENT OF FACTS

In October 2020, the Clark County Regional Drug Task Force made contact with Kevin Peterson through a confidential informant. Dec. of Anderson, Exh. B, p. 6.  They made contact through the social media site Snapchat. *Id.* The detectives had set up an avatar identity on Snapchat. *Id.*  Peterson was offering to sell drugs to the detectives.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 2
3:22-cv-5384 BJR

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

The detectives did research on Peterson, who went by the alias "SplashKP." *Id.* The research showed that Peterson made threatening comments about law enforcement and guns. *Id.*

> **KP $** @_splashkp · 4d
> You don't like who I'm affiliated with then nigga shoot me 🧑🏾
>
> ♡ 1
>
> **KP $** @_splashkp · 6d
> Niggas out here saying that they killers like I'm not either 🧑🏾
>
> **KP $** @_splashkp · 8/24/20
> Police pull me over Ima just start shooting before them
>
> **KP $** @_splashkp · 9/27/20
> I hang with pimps gang members n drug dealers
>
> ⟲ 2   ♡ 4

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 3
3:22-cv-5384 BJR

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

1  The task force arranged to meet Peterson in the parking lot of a motel. *Id.* A detective was stationed in the motel parking lot. In photos, Mr. Peterson had shown his face, the steering wheel of his Mercedes vehicle and what was purported to be drugs. *Id.*

At the time the drug dealer claimed he would arrive, a Mercedes sedan pulled into the motel parking lot. *Id.* Video depicts the Mercedes pulling in and getting blocked by two detectives. Dec. of Anderson, Exhibit A. As he pulled in, Detective Fields identified the driver as the drug dealer on Snapchat. *Id.*, Exh. B, p. 7.[1] The detectives now had probable cause to arrest the driver for conspiracy to deliver drugs. *Id.*

As the drug dealer pulled in, detectives with police lights pulled in and blocked his car. *Id.*, Exh. B, p. 8. Detective Anderson started giving him commands like "show me your hands." *Id.* The drug dealer started to reach into his center console box. *Id.* He then jumped out of the car and started running. *Id.* Another detective followed him for a short distance before being directed to terminate the foot chase. *Id.* That detective said the subject had a gun. *Id.*

Detective Anderson saw the suspect running south on the east side of the motel. *Id.*, p. 9-10. To the south is a bank and parking lot. *Id.* Det. Brown was in that parking lot. *Id.*[2] Det. Anderson saw the drug dealer walking south in the bank drive-thru lane. *Id.*, p. 10. He appeared to be holding a cell phone in his hand like he was recording the police. *Id.*, p. 11. Det. Anderson parked his car, exited and started giving the suspects more commands. *Id.*, p. 12. The suspect did not comply. *Id.* He was blocked by obstructions to the south. *Id.* Det. Anderson saw him reach into his hoodie pocket and pull his gun with his right hand. *Id.*, p. 12.

Det. Anderson then ordered Mr. Peterson to drop the gun, and warned him that he would shoot him. *Id.* Peterson did not comply, but started to run to the north. *Id.* Det.

---

[1] Det. Fields' statement is admissible under Washington's Fellow Officer Rule, or collective knowledge rule, that information known and communicated to others may be relied upon for probable cause. *State v. Butler*, 2 Wn. App. 2d 549, 570, 411 P.3d 393, 404 (2018).
[2] Detective Jeremy Brown is not a defendant in this case. Several months after this incident, he was murdered on the job.

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 4
3:22-cv-5384 BJR

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

Anderson concluded that Peterson, who they had probable cause to arrest, who was armed with a gun and had refused numerous commands, was an imminent threat to the deputies setting up the north side containment. *Id.* He was aware that the suspect could have thrown the gun away and did not. *Id.*, p. 16-18. He concluded that the suspect would not be arrested without a gun battle. *Id.* He concluded that he needed to shoot Peterson to stop that threat. *Id.*, p. 13-14.

Det. Anderson started shooting at the fleeing Peterson. *Id.* He concluded that he missed all his shots. *Id.*, p. 14. Peterson then stumbled and fell to the ground. *Id.* This sequence is shown on the video. *Id.,* Exhibit A. Det. Anderson stopped shooting. *Id.*, Exhibit B, p. 14. He saw Peterson sit up, raise his right arm with the gun and point toward him and Det. Brown. *Id.* He fired again. *Id.* Peterson went down. *Id.* An arrest team was formed and approached Peterson to administer first aid. *Id.*[3]

Deputy Feller arrived on this scene as Det. Anderson was joining Det. Brown in the bank parking lot. Dec. of Feller. He is the furthest north of the three. *Id.* He exited his vehicle and started giving Peterson commands, which he refused. *Id.* He saw that Peterson was running north and had a gun. *Id.* He saw Peterson turn towards him, and point the gun at him. *Id.* He fired to protect himself. *Id.* He saw Peterson go down on his back, and eventually drop the gun from his right hand. *Id.*

An expert working for the defendant has analyzed the bank surveillance video. Dec. of Neale, Exhibit B. He has concluded that the video shows Peterson holding a gun pointed toward the three deputies. *Id.*

A different expert, working for the Plaintiff, will likely claim that one cannot identify the object in Mr. Peterson's hand. He will claim it might be a gun or might be his cell phone. He will testify that if it were his cell phone, to produce the image in the bank video Mr. Peterson would have to be holding the phone like this:

---

[3] Plaintiffs may claim that Peterson was "shot in the back." This is not true. Declaration of Burt.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 5
3:22-cv-5384 BJR

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423



DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 6
3:22-cv-5384 BJR

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

## III.   LAW AND ARGUMENT

### A.   Summary Judgment

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also*, Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc*., 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.,* 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888-89 (1990).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 7
3:22-cv-5384 BJR

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

**B.     Deadly Force Standard**

Claims of excessive force are examined under the Fourth Amendment's prohibition on unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Under the Fourth Amendment, the use of deadly force is "reasonable only if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir.1994) (quoting *Tennessee v. Garner*, 471 U.S. 1, 3, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)).

Officers' actions are evaluated under the standard of objective reasonableness. *Graham*, 490 U.S. at 397. "In assessing reasonableness, the court should give 'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is attempting to evade arrest by flight.'" *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir.2010) (quoting *Graham*, 490 U.S. at 396). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Courts must allow for "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

**C.     Mimic Weapon Case Law**

Many cases have examined situations where police had a mistaken, yet genuine, fear that a person had a gun. *Mendez v. Cnty. of Los Angeles*, 897 F.3d 1067, 1072 (9th Cir. 2018) (subject had BB gun shaped rifle when he was shot). *Cruz v. City of Anaheim*, 765 F.3d 1076, 1078 (9th Cir. 2014) ("It would be unquestionably reasonable for police to shoot a suspect in Cruz's position if he reaches for a gun in his waistband, or even if he reaches there for some other reason. Given Cruz's dangerous and erratic behavior up to that point, the police would doubtless be justified in responding to such a threatening gesture by opening fire."). *Salazar-*

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 8
3:22-cv-5384 BJR

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

*Limon v. City of Houston, Tex.*, 197 L. Ed. 2d 751, 137 S. Ct. 1277, 1280 (2017) (Plaintiff allegedly "reached for his waistband before Thompson fired."); *Blair v. City of Dallas, Texas*, 3:14-CV-01515-P, 2015 WL 12940189, at *4 (N.D. Tex. July 2, 2015), aff'd sub nom. *Blair v. City of Dallas*, 666 Fed. Appx. 337 (5th Cir. 2016) ("A reasonable officer could have mistaken the flashlight for a gun, especially at night.").

The case law addresses simulating a gun with one's hands. "FC simulated taking a gun out of his pocket, charged the van with arms outstretched pointing his hands in the shape of a gun, and tried to make Officer Impastato fear he was about to be shot." *F.C. by & through Corrales v. Impastato*, CV-11-00287-PHX-ROS, 2013 WL 12202371, at *3 (D. Ariz. Mar. 12, 2013), aff'd sub nom. *Corrales v. Impastato*, 650 Fed. Appx. 540 (9th Cir. 2016).

Unsurprisingly, in an era where people routinely carry large cell phones, the case law has extended to circumstances where people point a cell phone at the police. In *Hudspeth v. City of Shreveport*, 270 Fed. Appx. 332, 333 (5th Cir. 2008), police were in a high-speed chase with Hudspeth. The next events were captured on video.

> Hudspeth exited his vehicle, holding a small, silver cell phone, and walked away from the first Officer on the scene.
>
> He pointed his cell phone at another Officer—with two hands and arms outstretched, as if he was aiming a handgun. Hudspeth was approached from behind by the first Officer, who had his weapon drawn. Hudspeth tussled with the Officer, and as he pulled away from that Officer, the Officer in whose direction the cell phone was aimed fired two shots at Hudspeth. Hudspeth continued to walk away, toward the store's entrance. The two defendant Officers pursued him, with weapons drawn.
>
> Hudspeth turned rapidly toward one of the Officers, and pointed his cell phone at him in the same manner—with two hands and arms outstretched, as if he was aiming a handgun. That Officer crouched; both Officers fired their weapons, and Hudspeth, unarmed other than with the cell phone, was shot in the back and killed. The incident in the parking lot took approximately seven seconds.

*Hudspeth v. City of Shreveport*, 270 Fed. Appx. 332, 333 (5th Cir. 2008).

"The Officers had an articulable basis to believe Hudspeth was armed and could reasonably have perceived him as posing a threat of serious bodily harm. *See*, *Garner*, 471

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 9
3:22-cv-5384 BJR

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

U.S. at 20–21, 105 S.Ct. 1694. Therefore, no genuine issue of material fact exists; and, as a matter of law, their actions were objectively reasonable." *Hudspeth v. City of Shreveport*, 270 Fed. Appx. 332, 337 (5th Cir. 2008).

In this case, even if Mr. Peterson was holding a cell phone instead of the gun, he displayed it like this:


DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 10
3:22-cv-5384 BJR

Keating, Bucklin & McCormack, Inc., P.S.
Attorneys at Law
801 Second Avenue, Suite 1210
Seattle, Washington 98104
Phone: (206) 623-8861
Fax: (206) 223-9423

The Defendants here would be justified in believing Peterson was pointing a gun at them, and the shooting would be reasonable.

**D.     The Force was Reasonable and the Negligence Claim Should Be Dismissed**

Plaintiffs bring a claim for a negligent shooting. Washington law recognizes that, "At common law, every individual owes a duty of reasonable care to refrain from causing foreseeable harm in interactions with others." *Beltran-Serrano v. City of Tacoma*, 193 Wash.2d 537, 550, 442 P.3d 608 (2019). "This duty applies in the context of law enforcement and encompasses the duty to refrain from **directly** causing harm to another through **affirmative acts** of misfeasance." *Id.(Emphasis added)*

And Washington recognizes that a complete defense to a claim of negligence is that the Plaintiff was committing a felony at the time of the injury. RCW 4.24.420, which in 2020 read: "It is a complete defense to any action for damages for personal injury or wrongful death that the person injured or killed was engaged in the commission of a felony at the time of the occurrence causing the injury or death and the felony was a proximate cause of the injury or death."

**1.   None of the Allegedly Negligent Acts Proximately Caused Mr. Peterson's Death.**

Plaintiffs have a police practices expert, Greg Gilbertson. Mr. Gilbertson last worked as a police officer in 1996. He has operated a largely on-line criminal justice associate degree program at a community college. He has been recognized by federal courts as an expert.

Mr. Gilbertson will criticize a lot about the defendants. He will suggest that the Drug Task Force Supervisor was not doing enough to supervise the detectives. He will argue that they should never have selected the motel as a location for the drug deal, speculating that there would be innocent by standers who might be injured. Mr. Gilbertson will claim that the detectives never should have chased Mr. Peterson, but waited at his car for him to return and peacefully surrender. He will claim, despite the evidence, that the detectives lacked probable

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 11
3:22-cv-5384 BJR

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

cause, and this was a mere "Terry" stop. He will criticize Deputy Feller for leaving his car door – a reinforced metal door – to confront and try to stop Peterson.

The problem with all of Gilbertson's criticism is that it was not the proximate cause of any injury.

**2. Peterson was Committing a Felony When He Was Shot.**

The negligence claim should be dismissed because Peterson was committing a felony when he was shot and killed. It is undisputed that he committed conspiracy to sell drugs. Any person who conspires to deliver drugs is subject to the same penalty as one who actually delivers the drugs. RCW 69.50.407. Peterson was trying to sell prescription pills. That is a Class C felony. RCW69.50.402.

At the moment he was shot and killed, Peterson was committing attempted Assault in the First Degree, a Class B felony. RCW 9A.36.011; RCW 9A.28.020. He was also committing Assault in the Third Degree, a Class C felony. RCW 9A.36.031 (g).

Plaintiff may claim that Peterson was shot in the back while running away and, therefore, wasn't shot for pointing a gun. The undisputed evidence is that Det. Anderson missed. Dec. of Anderson, Exh. B, p. 10-11. Peterson was not shot in the back. Dec. of Burt.

Plaintiff may claim that he could not commit assault since he only had the cell phone pointed at the deputies in his outstretched right arm. Washington uses the common law definition of assault. *State v. Wilson*, 125 Wn.2d 212, 217, 883 P.2d 320, 323 (1994). That common law definition includes "putting another in apprehension of harm whether or not the actor intends to inflict or is capable of inflicting that harm." *State v. Wilson*, 125 Wn.2d 212, 218, 883 P.2d 320, 323 (1994). Here, pointing a cell phone like it is a gun at deputies with their guns drawn is an assault.

Plaintiff may also point to case law where the person alleged to have committed the felony was mentally ill and could not form the necessary intent to assault. Those are cases where qualified psychiatrists had diagnosed the Plaintiff with a mental disease that raised the question whether they could understand that they were assaulting someone. Here, there is no

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 12
3:22-cv-5384 BJR

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

evidence Mr. Peterson had such a mental disease to negate intent.

### E. Anderson and Feller are Entitled to Qualified Immunity.

Under the second prong of the qualified immunity test, we ask whether the alleged violation of [Plaintiff's] Fourth Amendment right against excessive force was clearly established at the time of the officer's alleged misconduct." *C.V. by and through Villegas v. City of Anaheim*, 823 F.3d 1252, 1257 (9th Cir. 2016) (internal quotation marks omitted). If it is not clearly established, the summary judgment is appropriate. Here, there is no case law that would tell deputies chasing a man who was indisputably armed, who dropped the gun, and then decided to point his cell phone at them like a gun, that it would be unconstitutional to shoot that man. Summary judgment for Anderson and Feller is appropriate.

### F. The County Has No *Monell* Liability.

In order for the County to be liable under the Civil Rights theory, Plaintiff must prove that the County adopted an unconstitutional policy that directed the deputies to shoot and kill Mr. Peterson. Plaintiffs will probably make the claim that Clark County deputies shot and killed three people in an 18-month span. The problem with this argument is that 2 of those 3 shootings occurred after Mr. Peterson was shot. Plaintiffs may claim that the County policy does not mention de-escalation. State law in 2022 was amended to require de-escalation in police policies. The failure to use that phrase in 2020 does not render the Clark County policy unconstitutional. The County should be dismissed.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 13
3:22-cv-5384 BJR

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

This case should be dismissed on summary judgment. While there may be an issue of fact on whether Peterson was pointing a gun or a cell phone, pointing a cell phone at deputies trying to arrest you and giving you numerous warnings will likely lead to you getting shot. Such a shooting is reasonable, and the case should be dismissed.

I certify that this memorandum contains 3,237 words, in compliance with the Local Civil Rules.

DATED:  June 1, 2023

                KEATING, BUCKLIN & McCORMACK, INC., P.S.

                By:  */s/ Andrew Cooley*
                Andrew Cooley, WSBA #15189
                Attorneys for Defendants

                801 Second Avenue, Suite 1210
                Seattle, WA  98104
                Phone: (206) 623-8861
                Fax:    (206) 223-9423
                Email: acooley@kbmlawyers.com

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 14
3:22-cv-5384 BJR

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

# CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Attorneys for Plaintiffs**
D. Angus Lee, WSBA #36473
ANGUS LEE LAW FIRM, PLLC
9105A NE Hwy. 99, Ste. 200
Vancouver, WA 98665
Telephone: 360.635.6464
Email:  angus@angusleelaw.com

**Attorneys for Plaintiffs**
Mark Lindquist, WSBA #25076
MARK LINDQUIST LAW, PLLC
505 S. Sheridan Ave.
Tacoma, WA 98405
T: 253-861-8611
Email:  mark@marklindquistlaw.com

DATED:  June 1, 2023

*s/ Andrew Cooley*
Andrew Cooley, WSBA #15189
801 Second Avenue, Suite 1210
Seattle, WA  98104
Phone: (206) 623-8861
Fax:    (206) 223-9423
Email: acooley@kbmlawyers.com

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 15
3:22-cv-5384 BJR

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423